[No. 14780. Department Two. September 3, 1918.]

VERNON MERRIAM, *as Guardian etc., Appellant,* v.
VINTON A. PATRICK, *Respondent.*[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY—CONTROL BY HUSBAND
—INSANITY OF WIFE. A husband, appointed as guardian of his insane wife, may convert community realty into personalty and take his one-half of it without accounting to the probate court; as the management and control of community realty remains in the husband notwithstanding the insanity of the wife and appointment of a guardian.

Appeal from a judgment of the superior court for Spokane county, McCroskey, J., entered November 23, 1917, upon findings in favor of the defendant, in an action by a guardian to recover property of an insane ward, tried to the court. Affirmed.

*D. R. Glasgow,* for appellant.

*Danson, Williams & Danson (George D. Lantz,* of counsel), for respondent.

MACKINTOSH, J.—When the wife of the defendant Patrick was adjudged insane, she and her husband owned a house and lot valued at about $1,200. After the husband's appointment as guardian, he sold this property under authority of the court, having executed a bond with the defendant surety company as surety, conditioned that he would account for all funds coming into his possession as guardian of his wife's estate. These funds consisted solely of the amount realized from this sale, and from them he paid claims against the estate and resigned his guardianship, taking as his own property one-half of the money remaining in his hands. The plaintiff was thereafter appointed guardian, and commenced this action to secure the res-

[1] Reported in 174 Pac. 641.

toration of the sum so taken. The question here for answer is, Can the husband, who has been appointed guardian of the estate of his insane wife, convert the community real estate into personal property and take one-half thereof as his own, without accounting to the probate court therefor; or, stated a little differently, does the management and control of the community property remain in the husband notwithstanding the insanity of the wife and the appointment of a guardian of her estate?

There is not involved here the husband's duty to support his afflicted wife and to provide the necessaries and comforts required by her. In the light of the fact that insanity may last for a long period and possibly a lifetime, and that the community property may, in many instances, consist of a business that requires special knowledge to conduct, the courts will hesitate to take from the husband the management and control of community property and place it in the hands of the wife's guardian for management during her incapacity, unless the law unquestionably provides for this method. To deprive the husband of the management and control of the community property would virtually divest him of his interest therein, and if the property consisted of a business in which he was engaged, it would possibly deprive his unfortunate wife, in a great many instances, of the support which she is entitled to, for we cannot assume that the husband would in all instances be appointed guardian of his wife's estate.

At the time of the passage of the act which relates to the guardianship of insane persons, being §§ 1654 to 1670, Rem. & Bal. Code, the first community property law of this state had not been enacted; and when that act refers to property subject to the control of the guardian of an insane spouse, it did not have in contemplation community property. Moreover, the

language itself of the act does not include community property, had such property been in existence at the time of the passage of the act. The act throughout in speaking of the property subject to guardianship speaks of "their estates," "the estate of such insane person," "the estate real and personal, of the person under guardianship," "management of his estate," "proceeds of his estate." In other words, by the act the guardian is given the management of property which the insane person possesses, and the guardian can only exercise those rights of management which the ward, when sane, could have exercised. The guardian of an insane wife cannot take over the management and control of the community property, that being given to the husband. If the guardian were entitled to the control and management of the wife's half of the community property the property would, of necessity, have to be divided in some manner. In this case, the community realty having been sold, the husband, in effect, divided it by dividing the proceeds, and, as guardian, had the custody and management of one-half, for which he accounted in the probate proceeding. Under the law, he was not obligated to do even this. We do not hold that the husband is not bound to support and maintain his insane wife out of community property, but there are ways in which husbands seeking to evade that duty may be compelled to perform it; but, as we have stated in the beginning of this opinion, the question of support and maintenance is not involved in this case, our conclusion merely being that the guardian of an insane wife does not, upon his appointment, secure the management and control of community property.

The judgment is affirmed.

MAIN, C. J., MOUNT, and HOLCOMB, JJ., concur.

CHADWICK, J. (concurring)—When the husband had accounted to the court for the whole property and was allowed to retain the one-half that was his own, his discharge as guardian operated as a distribution of funds within the jurisdiction and keeping of the court. The court could not reassert its jurisdiction, and, for the same reason, the successor guardian can assert no interest in the divided fund. I concur upon this ground.