[No. 33329. Department One. March 1, 1956.]

*In the Matter of the Guardianship of* LENA M. YOUNGKIN, *an Incompetent.*[1]

*Raymond & Nicholson*, for appellant.

*Erik Froberg*, for respondent Seattle-First National Bank.

DONWORTH, J.—This is an appeal from a judgment and order of the probate court surcharging a husband, as guar-

[1]Reported in 294 P. (2d) 423.

dian of the estate of his incompetent wife, with certain items of community property shown in his final account as having been paid or delivered to his daughters and a granddaughter, none of whom were related to the incompetent.

The allowance of these items was objected to by the Seattle-First National Bank, which had been appointed special administrator of the estate of the incompetent upon her death. A sister of the incompetent, who was devised one fifth of the estate under her will, also objected to the allowance of the same items.

Briefly stated, the situation may be described as follows:

The guardian and the incompetent had been husband and wife for more than twenty years. He was a retired carpenter. They had no children, but the guardian had two daughters by a prior marriage. In May, 1954, Mrs. Youngkin suffered a paralytic stroke. On July 12, 1954, her physical and mental condition was such that it was necessary to have a guardian appointed to care for her estate.

On that date, Mr. Youngkin was, upon his own petition, appointed guardian of his wife's person and estate. He qualified by filing his oath and a surety bond in the penal sum of one thousand dollars. He published notice to creditors and filed an inventory of their community property and certain of the incompetent's separate property. He estimated the total value of the inventoried property as being approximately forty thousand dollars. There were omitted from this inventory two savings accounts and other items, the value of which was in excess of seventy-four hundred dollars. These omitted items were listed in the guardian's final report.

Mrs. Youngkin was confined to a rest home during the period of the guardianship, which was approximately four months. She died November 15, 1954, and, as above stated, the bank was appointed as special administrator of her estate.

On January 4, 1955, the guardian filed his final report and petition for settlement thereof. On January 25, 1955, the bank, as such administrator, filed objections to the final re-

port, asserting that the guardian had no authority for the following acts:

"Gift of washer and dryer to Bruce and Joyce Thorp who are the daughter and son-in-law of said guardian but said Joyce Thorp is not the daughter of the above named incompetent 375.00

"Loan to Wallace and Pearl Brown, said Pearl Brown being the granddaughter of above named guardian but not a lineal descendent of above named incompetent 405.31

"The payment by the guardian of $2,652.92 to a daughter of guardian but not the daughter of above named incompetent which was applied on the purchase of real estate in the name of said daughter 2652.92

"That each of said above described transactions are grossly irregular and improper and the guardian should be required to fully account in each of these transactions and said guardian should be required to immediately pay all sums used in connection with each of these transactions to the undersigned as special administrator of the estate of Lena M. Youngkin, deceased."

The same objections were filed by the sister of the deceased incompetent above referred to, who was a devisee under her will. By supplemental instruments filed later, objection was made to the allowance of any compensation to the guardian for his services. Both objectors were represented by the same counsel.

On January 26, 1955, the court heard testimony in support of the report and the objections thereto. At the conclusion of the hearing, the court, in an oral decision, reviewed the acts of the guardian at some length, and commented on his lack of compliance with the law relating to the conduct of a guardianship and stated that the guardian was guilty of misfeasance in office.

Thereafter, the court made findings of fact and conclusions of law, and entered a judgment and order on the final account of the guardian. The portion thereof which is particularly involved in this appeal reads as follows:

"ORDERED, ADJUDGED, AND DECREED that the following items of expenditures in paragraph X of said Final Report and Account are disallowed and the guardian should be and hereby is surcharged therefore:

| | |
|---|---:|
| "Gift of washer and dryer to Bruce and Joyce Thorp | $375.00 |
| Loan to Wallace and Pearl Brown (in reality a gift) | 405.31 |
| Down payment on house located at 808 West 3rd Avenue, Aberdeen, Washington | 2652.92 |
| Any household and living expenses during this guardianship up to November 15, 1954, in excess of $1,-000.00 total, and any expenditures for upkeep and repair for any of the guardianship property during the same period in excess of $134.00, making a total disallowance regarding household and living expenses and maintenance and repair of $324.00 | 324.00 |

and it is further

"ORDERED, ADJUDGED, AND DECREED that because of the guardian's gross misfeasance and mismanagement, as guardian, that he not receive any compensation as guardian, . . ."

In ten assignments of error, appellant asserts that the probate court erred in surcharging him with the four items set forth above, in denying him any fee for services as guardian, and in limiting his living and maintenance expenses for the four-month period of the guardianship to one thousand dollars. Appellant had estimated this last item as $1,458.

 The only portion of the court's findings which are quoted in appellant's assignments of error are certain parts of findings Nos. 2, 3, 4, and 5. The rest of these findings must be accepted as verities, since they are not set forth in appellant's brief. *Paulson v. Higgins*, 43 Wn. (2d) 81, 260 P. (2d) 318, 266 P. (2d) 800.

The probate court saw and heard the witnesses. It chose to believe (so far as there was any conflict) the testimony which was favorable to respondents' position. The challenged portions of the findings are supported by the evidence. Since the evidence does not preponderate against them, we must accept them as verities likewise. We, therefore, do not discuss the evidence relating to the three transactions between appellant and each of his two daughters and his granddaughter which were referred to in respondents' objections.

Coming to the legal questions presented by the assign-

ments, the most serious is stated in appellant's brief in this manner:

"Whether a husband, by securing his appointment as guardian of the person and estate of his incompetent wife, thereby waives his statutory right to control, manage and dispose of the community property during the period of the guardianship."

Appellant states the question in another way as being:

"Whether community property loses its status as community property on and during the appointment of the husband as guardian of the person and estate of his incompetent wife."

These questions relate particularly to the transaction described in finding No. 5, which reads as follows:

"That during this guardianship before November 15, 1954, Everett L. Youngkin, as guardian, gave to his daughter, Ilene Collins, the sum of $2,652.92, from the funds of this guardianship which funds were used by said daughter, as a down payment of a house at 808 West 3rd Avenue, Aberdeen, Washington, the contract and title to said real estate being taken in the name of said daughter and not including the guardian or the incompetent in any way, that at the time of this gift the said guardian had the home in Seattle of the guardian and the incompetent, which is still undisposed of, and that there was no request for court permission and no court authority for this expenditure, that there was not sufficient community purpose or consideration in connection with this transfer to justify the giving to said daughter of the guardian, but not of the incompetent, this gift of $2,652.92."

Appellant argues that, as manager of the community property, under RCW 26.16.030, he had authority to make a down payment on a house to be occupied by his widowed daughter and himself from community funds in his possession as guardian of his incompetent wife's estate. He attempted to prove an oral contract on the part of his daughter to take care of him in this house, but the court found that this was a gift to the daughter.

In support of this argument, appellant refers to our decision in *Merriam v. Patrick*, 103 Wash. 442, 174 Pac. 641.

That case involved the right of a husband (who had been appointed as guardian of his wife after she had been adjudged insane) to retain one half of the net proceeds resulting from the sale of a house and lot which he had made pursuant to authority of the court. The husband paid all claims against the estate and resigned as guardian, retaining half of the amount then remaining in his hands. A second guardian was appointed to succeed him, and he brought the action against the husband to compel restoration of this sum of money. A majority of the court held that the guardian statute antedated the first community property law, and that *the successor guardian* could not take over management and control of the community property because those rights were vested in the husband. Judge Chadwick concurred in the decision on the ground that the probate court had lost jurisdiction over the husband's half of the proceeds of the sale and that the successor guardian could not assert any interest in the divided fund.

We think that the *Merriam* case differs materially from the case before us. Here, appellant invoked the jurisdiction of the probate court by petitioning to be appointed guardian. As guardian, he listed and valued all the community property in his inventory. He took an oath that he would perform all the duties required of him by law in his capacity as guardian. When he filed his final report and sought to be discharged as guardian, he purported to report his acts in the management of the community property. Unlike the situation in the *Merriam* case, appellant here had not ceased to be the guardian. He was still in possession and control of all the community property and was asking the probate court to approve his transferring a substantial amount of community property to his daughter without legal consideration.

We cannot hold that, under the circumstances shown to exist in this case, appellant, as husband, had legal authority to ignore his obligations as guardian and flout the control of the probate court over the property of its ward.

The probate court did not err in surcharging appellant with the sum transferred to Ilene Collins. Neither was

any error committed in surcharging him with the cost of the two washers and driers which the court found were given to appellant's granddaughter, Pearl Brown, and her husband, and to his daughter, Joyce Thorp, respectively.

■ Nor can we find any abuse of discretion on the part of the probate court in surcharging appellant with $458 out of his *estimated* living and maintenance expenses during the four months he was acting as guardian. He was allowed one thousand dollars for these *estimated* expenses, for which he had no vouchers or itemized account. Appellant submitted nothing to the probate court in his final report upon which the court could intelligently pass judgment, so he cannot be heard to say that the court erred in disposing of the matter of these expenses as it did.

Lastly, appellant asserts that the probate court erred in finding that he "has been guilty of gross misfeasance as guardian," and that, "as guardian, has had no regard or respect whatever for the laws and rules regarding guardianships," and in denying him compensation for his services.

■ The respects in which appellant failed to properly perform the acts required of a guardian and his refusal to keep proper vouchers and itemized accounts need not be detailed here. The record fully justifies the statement above quoted from the court's findings, and we cannot say that there was any abuse of discretion in refusing to allow him any compensation. *In re Kelley*, 193 Wash. 109, 74 P. (2d) 904; *In re Carlson*, 162 Wash. 20, 297 Pac. 764.

The judgment and order appealed from is in all respects affirmed.

HAMLEY, C. J., MALLERY, FINLEY, and OTT, JJ., concur.